UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-61231-DIMITROULEAS/ROSENBAUM

PARROT, INC.,

                Plaintiff,

v.

NICESTUFF DISTRIBUTING INTERNATIONAL,
INC.,

                Defendant.

_____/

## ORDER

This matter comes before the Court upon Non-Party ESI, Inc.'s ("ESI") Motion to Quash Subpoena and for Protective Order [D.E. 115]. The Court has reviewed ESI's Motion, Parrot's Memorandum in Opposition [D.E. 122], ESI's Reply Memorandum [D.E.125], and the record, and is otherwise duly advised in the premises.  The Court now grants in part and denies in part ESI's Motion.

## BACKGROUND

Plaintiff Parrot, a New York corporation, brought this action to recover payment in excess of $75,000.00 for electronic communications equipment allegedly ordered and received by NiceStuff Distributing International, Inc. ("NiceStuff International" or "Defendant"), between September 29, 2005, and January 30, 2006.  NiceStuff International, a Florida corporation, counter-claimed, alleging that Parrot had breached its contract with NiceStuff International and had tortiously interfered with NiceStuff International's attempts to distribute Parrot products in the northwest.  On May 14, 2007, the Court entered a Consented Final Judgment in Favor of Plaintiff for $160,740.56, plus interest. [D.E. 30].

On June 2, 2008, following discovery in aid of execution of the judgment, Parrot obtained a writ of execution for "[a]ny bank accounts, accounts receivable, cash, assets, inventory, property, stocks, bonds, certificates of [NiceStuff International], whose address is 34 South Federal Highway, Suite A, Dania Beach, Florida 33004."  [D.E. 77].  The United States Marshal's Service served the Writ of Execution on both SunTrust Bank and NiceStuff International at its Dania Beach address listed above.  [D.E. 78, 80].  SunTrust Bank filed an Answer to the Writ of Execution indicating that it had no accounts, property, or assets of NiceStuff International.  *See* D.E. 79.  As for service of the Writ of Execution on NiceStuff International, the Marshal's Service indicated that "[t]here were 3 slot machines that were supposed to go to the plaintiff.  After speaking with [Plaintiff's counsel], [Plaintiff] is not going to take them because the machines are not legal in the U.S."  D.E. 80.

In view of the lack of recovery from NiceStuff International, and based on matters learned during discovery in aid of execution, on August 22, 2008, Plaintiff filed its Motion to Commence Supplementary Proceedings and to Implead Third Parties.  [D.E. 81].  More specifically, Parrot sought to implead Michael and Ekaterina Savuskan, Teymur Karayev, and NiceStuff Distributing, Inc., and to begin supplementary proceedings, based on Parrot's contentions that these third parties received fraudulent transfers from NiceStuff International or that the third parties are NiceStuff International's alter egos.  *Id.*

After considering Plaintiff's Motion to Commence Supplementary Proceedings and to Implead Third Parties, as well as the responses of the Savuskans, Karayev, and NiceStuff Distributing, on October 15, 2008, the Court found that Parrot had demonstrated that supplementary proceedings were warranted and, therefore, granted Parrot's Motion to Commence Supplementary Proceedings and Implead Third Parties.  [D.E. 87].  As a result, Michael and Ekaterina Savuskan,

Teymur Karayev, and NiceStuff Distributing, Inc., became Impled Defendants for the purpose of supplementary post-judgment proceedings in aid of execution. *Id.* at 4.

During the course of the supplementary proceedings, Parrot deposed Michael and Ekaterina Savuskan. Ekaterina Savuskan, who is the former chief executive officer and current president and director of Ekaterina Savuskan, Inc. ("ESI"), testified that ESI's bank account served as the sole bank account used by Michael and Ekaterina Savuskan during 2007 and 2008. D.E. 122 at 5-6. Michael Savuskan, Ekaterina's husband and the former president and chief executive officer of NiceStuff International [*see* D.E. 66 at 7], explained that when he ran NiceStuff International, he arranged for his salary to be paid to ESI. *Id.* at 3-4. According to the excerpt from Michael Savuskan's deposition, Michael and Ekaterina are the sole shareholders of ESI. Finally, Michael Savuskan testified at his deposition that at the time of his deposition, ESI was serving as a consultant to NiceStuff Distributing by providing the services of Michael Savuskan. *Id.* at 4-5. Other than acting in this capacity, Michael Savuskan stated, ESI was not engaged in any other business. *Id.* at 5. Based on this information and Parrot's contention that ESI received fraudulent transfers from Defendant NiceStuff International, on January 23, 2009, Parrot filed its Motion to Implead ESI, Inc. *See* D.E. 120.

In the meantime, on January 8, 2009, Parrot served ESI with a Notice of Deposition *Duces Tecum*, seeking the deposition and document production of ESI on January 27, 2009.[1] [D.E. 109]. ESI filed a Motion for Protective Order on January 20, 2009, seeking relief from the January 27th deposition. *See id.* Among other bases for its January 20th Motion, ESI asserted that it was not a

---

[1]The original Notice set the deposition and production date for January 23, 2009, but the parties subsequently agreed to move the scheduled date to January 27, 2009.

party to the proceedings, and Parrot had failed to serve it with a subpoena.  Noting that in the absence

of service of a subpoena or other process on a non-party, the Court lacks jurisdiction over the party

to compel its attendance at a deposition or its compliance with a *duces tecum* request, the Court

denied as moot ESI's January 20th Motion on January 21, 2009.  [D.E. 110].

Consequently, later that same day, Parrot served a subpoena *duces tecum* on ESI for its

deposition and document production.  The January 21, 2009, *duces tecum* attachment requests the

same documents as the Notice of Taking Deposition *Duces Tecum* served on ESI on January 8, 2009.

On January 22, 2009, ESI filed its pending Motion to Quash Subpoena and for Protective

Order [D.E. 115].  ESI challenges the notice period provided, as well as the breadth and scope of the

document requests contained in the *duces tecum* attachment.  Parrot responded on January 26, 2009,

arguing that the subpoena should not be quashed, and ESI is not entitled to a protective order [D.E.

122].  Later that same day, ESI filed its Reply [D.E. 125].

## DISCUSSION

The Court begins its analysis by reviewing the governing Federal Rules of Civil Procedure.

Rule 26(c), Fed. R. Civ. P., regulates the issuance of protective orders and empowers courts upon

a showing of "good cause," to make "any order which justice requires to protect a party or person

from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  Among other

limitations a court may place upon discovery, a court may require any or all of the following:

(1)     that the disclosure or discovery not be had;

(2)     that the disclosure or discovery may be had only on specified terms and
        conditions, including a designation of the time or place;

(3)     that the discovery may be had only by a method of discovery other than that
        selected by the party seeking discovery;

> (4)     that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;
>
> (5)     that discovery be conducted with no one present except persons designated by the court.

Rule 26(c), Fed. R. Civ. P.

The burden for demonstrating "good cause" falls on the shoulders of the moving party. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001).  In evaluating a movant's submission of "good cause," a court should balance the movant's interest in preventing the discovery sought against the other party's interest in seeking the discovery.  *Id.* (citing *Farnsworth v. Procter & Gamble, Co.,* 758 F.2d 1545, 1547 (11th Cir. 1985))*.* To make this determination, the court must """insist[] on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.""" *Gulf Oil v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (citations omitted).  Although a district court enjoys broad discretion in fashioning a protective order, the court must articulate its reasons for granting a protective order.  *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355, 357 (11th Cir. 1987).

In this case, ESI asserts that good cause for a protective order and to quash the subpoena exists because Parrot provided ESI with insufficient notice of the deposition and document production under Rule 45(c)(3), Fed. R. Civ. P., and Local Rule 26.1(J), S.D. Fla.  Rule 45(c)(3), Fed. R. Civ. P., provides, in relevant part,

> (3)(A)  *When Required*.  On timely motion, the issuing court must quash or modify a subpoena that:
>
> (i)      fails to allow a reasonable time to comply. . . .

Thus, should the Court determine that the subpoena to ESI does not provide for a "reasonable time

to comply," it must take action either to quash or modify the subpoena.

As for what constitutes a "reasonable time to comply," ESI suggests that the Court should look to Local Rule 26.1.J, S.D. Fla.  That rule is entitled, "Reasonable Notice of Taking Depositions," and it states, in pertinent part,

> Unless otherwise stipulated by all interested parties, . . . a party desiring to take the deposition within this State of any person upon oral examination shall give at least five working days' notice in writing to every other party to the action and to the deponent (if the deposition is not of a party) . . . .
>
> Failure by the party taking the oral deposition to comply with this rule obviates the need for protective order. . . .

Because Parrot did not serve its subpoena on ESI for the January 27, 2009, deposition until January 21, 2009 – four business days ahead of time, ESI argues, Parrot did not, as a matter of law, provide a "reasonable time to comply" with the subpoena, and the subpoena, therefore, must be quashed.

The problem with ESI's argument stems from the fact that Local Rule 26.1.J does not refer to service of subpoenas; rather, it speaks of "notice in writing."  Here, while Parrot did not serve ESI with a subpoena at least five business days before the scheduled deposition, it did serve ESI with a *Notice of Deposition* eleven business days (and nineteen calendar days) prior to the January 27th deposition date.  Under these circumstances, where the Notice of Deposition was served more than five days before the scheduled deposition, the Court cannot find, as a matter of law, that Parrot's *subpoena* service was untimely by the dictates of Local Rule 26.1.J.

Thus, the Court must return to considering the meaning of a "reasonable time to comply" under Rule 45(c)(3).  Upon the Court's review of other challenges to the sufficiency of notice, the Court notes that, generally, courts make the determination of reasonableness on a case-by-case basis,

considering the factors at work in the given case.  Here, the record indicates that the January 21st

service date for the subpoena did not result from a lack of good faith.  Instead, Parrot served the

subpoena on the very same day as the Court issued its Order advising the parties of its inability to

enforce a notice of deposition in the absence of a properly served subpoena or other appropriate

process.  Moreover, on January 8, 2009, Parrot had previously served ESI with the same *duces tecum*

attachment as provided with the January 21st subpoena.  In addition, based on ESI's original Motion

for Protective Order [D.E. 109], it appears that, at least until January 21, 2009, when the Court issued

its Order [D.E. 110], ESI believed it may well have had an obligation to appear for the deposition

and produce the requested documents in the absence of an order from the Court relieving it of that

responsibility.  As Parrot then served the subpoena for precisely the same documents on ESI that

same day, at most, ESI may have believed itself in the clear for a few hours only on January 21,

2009.  Under these circumstances, particularly where ESI does not argue that it does not have the

time necessary to gather the requested documents, the Court will not find that Parrot did not provide

ESI with "reasonable time to comply."

That, however, does not end the inquiry, as ESI has also filed objections to specific aspects

of the document request.  The Court now reviews those objections in turn.

As an initial matter, ESI argues that the Court should limit discovery of documents to those

created prior to October 1, 2007.  D.E. 115 at 4.  In support of this contention, ESI states that "final

payment for the 2006 transaction between NiceStuff International . . . and NiceStuff Distributing .

. . was made on March 26, 2007, and . . .NiceStuff International was administratively dissolved by

September, 2007."  *Id.*  Consequently, ESI urges, documents created after September 30, 2007, are

simply not relevant to the issues before the Court.

Therefore, the Court revisits Rule 26(b), Fed. R. Civ. P., which sets forth the permissible parameters of discovery.   Under that rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of discovery is to allow a **broad** search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case."  Adv. Com. Notes, 1946 Amendment, R. 26, Fed. R. Civ. P. (citations omitted) (emphasis added).   Indeed, the Advisory Committee Notes approvingly cite language from a case stating that "the Rules . . . permit 'fishing for evidence as they should.'"  *Id.* (citation omitted); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure.  As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies.  The United States Supreme Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[2] (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)).

Of course, as the Court noted in its December 9, 2008, Order on Ekaterina Savuskan's Motion for Protective Order [D.E. 103], the scope of permissible discovery is not unbounded.  As Rule 26(b) itself provides, requested discovery must be relevant to a claim or defense in the case,

---

[2]  Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

and it must not impose undue burden or be protected by privilege, under the tests described in Rule 26(b)(2)(C).

After considering the definition of "relevance" established by Rule 26, the Court does not agree that documents post-dating September 30, 2007, are not relevant because the Court finds that such documents could reasonably be expected to relate to Parrot's claim that ESI is being used to assist in diverting monies from NiceStuff International and in ESI's defense that it is not.  More specifically, the Court notes that Ekaterina Savuskan herself admitted that ESI's bank account constitutes the only bank account used by Michael and Ekaterina Savuskan during 2007 and 2008. Michael Savuskan testified that he (through the use of ESI) continued to serve as a "consultant" to NiceStuff Distributing.  While the Court expresses no opinion at this time regarding whether either of the Savuskans or ESI were attempting to siphon off the assets of NiceStuff International to avoid execution of Parrot's judgment, the Court is, nonetheless, cognizant that, generally speaking, transactions attempting to disguise the nature of fraudulently obtained proceeds do not always match neatly with the time frames of the underlying fraudulent activities.  Indeed, some of the more successful attempts to disguise fraudulent proceeds happen significantly after the underlying fraudulent activity occurs, precisely because suspicion may instead be focused on the period during which the underlying fraudulent activity happens.

Here, Michael Savuskan, the person who sold the assets of NiceStuff International to their current owner, continued to receive money through ESI from the current owner for work that Michael Savuskan allegedly performs for NiceStuff International's successor company.  Parrot alleges that the successor company, which bears a name very similar to Defendant and Judgment Debtor NiceStuff International, is not a legitimate and separate business entity from NiceStuff

International, and Michael Savuskan effectively put NiceStuff International through the sales transaction for the purpose of attempting to place NiceStuff International's monies beyond the grasp of Parrot.  To the extent that Michael Savuskan continued to receive money from NiceStuff International beyond September 30, 2007, the Court finds information relating to those transactions to be relevant to Parrot's claims.  Similarly, what Michael Savuskan did with such monies is equally relevant.  If the monies were improperly obtained in the first place, Parrot has a right to attempt to learn what became of them.  In light of the fact that Ekaterina Savuskan testified that during 2007 and 2008, the Savuskans solely used the ESI bank account, the records of that account during that period of time are relevant.  Accordingly, the Court overrules ESI's general objection to the subpoena to the extent that it seeks records through the present.

Next, ESI objects to Request 2, which seeks, among other documents, those relating to all accounts receivable, all lists of assets, and all lists of liabilities.  In support of this objection, ESI argues that these requests unfairly and impermissibly seek to "delve into ESI's current confidential business relationships with third parties and would not be relevant to Plaintiff's attempt to trace or locate monies which may have allegedly transferred to or through ESI."  D.E. 115.  For the reasons previously discussed, however, the Court cannot agree with ESI.  First, Michael Savuskan testified at his deposition that through ESI, he continued to serve as a "consultant" to NiceStuff Distributing. Second, Michael Savuskan explained that other than that business, ESI had no other business. Moreover, Michael Savuskan stated that prior to the sale of NiceStuff International's assets, NiceStuff International paid his salary to ESI.  Thus, ESI's accounts receivable, which could fairly be expected to reflect monies receivable from NiceStuff Distributing for the "consulting" work of Michael Savuskan, fall within the realm of relevancy.  Similarly, assets of ESI, which may well

include Michael Savuskan and monies he has been paid by NiceStuff Distributing are also relevant. Additionally, liabilities are relevant because they can fairly be expected to reflect amounts allegedly owed to the Savuskans. Finally, to the extent that these documents might reflect that ESI has no other business, that fact might well be relevant to the legitimacy of ESI's separate existence from Michael and Ekaterina Savuskan.

As for Request 17, which seeks all contracts, agreements, and letters of intent, as well as all documents relating thereto, to which ESI has been a party since January 1, 2006, the Court likewise finds this request to seek relevant information. The reasons for this conclusion echo those set forth above and rely particularly upon Michael Savuskan's concession that ESI basically existed to receive Michael Savuskan's salary and that ESI's business was effectively limited to providing Michael Savuskan as a "consultant" for NiceStuff Distributing – statements that are not contradicted by any evidence of record at this time. Under these circumstances, it is difficult to conceive of how obtaining all contracts, agreements, and letters of intent to which ESI has been a party since January 1, 2006, will disclose any confidential business relationships with third parties who have no alleged relationship to the instant case.

ESI further complains that this request is impermissibly broad to the extent that it seeks "all documents relating thereto." The Court agrees. *See, e.g., Audiotext Comm.'s v. U.S. Telecom, Inc.*, 1995 WL 18759, *1 (D. Kan. Jan. 17, 1995); *W. Res., Inc. v. Union Pac. R.R. Co.*, 2002 U.S. Dist. Lexis 14796, *5-6 (D. Kan. July 23, 2002). Thus, the Court limits Request 17 to all contracts, agreements, and letters of intent to which ESI has been a party since January 1, 2006.

With regard to Request 18, which asks for all contracts, agreements, and letters of intent, and

-11-

documents relating thereto, in which ESI sells its services to any corporation, business or individual, the Court makes the same finding as it did with respect to Request 17.  The Court further limits Request 18 in the same manner as it did Request 17, thus eliminating the requirement for ESI to produce documents "relating thereto."

Next, ESI objects to Request 24.  This request seeks all documents "reflecting any and all compensation you receive or have received from ESI, Inc., since January 1, 2006."  ESI objects because the Notice of Deposition is directed to the corporate representative of ESI in his or her official capacity on behalf of the corporation, so, ESI suggests, the request makes no sense, as it effectively asks the corporation for documentation reflecting compensation it has received from itself.  Second, ESI complains that even if interpreted to seek information pertaining to the compensation of the corporate representative, the request is objectionable because Michael Savuskan serves as the corporate representative, and Parrot already has the information sought.  Consequently, ESI asserts, Request 24 is duplicative.

The Court agrees with ESI that Request 24 is not proper in the context of a Rule 30(b)(6) deposition such as Parrot noticed in this case.  While Parrot may have been able to ask for documents concerning compensation of the corporate representative appearing on behalf of ESI at the deposition, requesting all documents relating to compensation "you receive" is not appropriate.  The deponent at a Rule 30(b)(6) deposition is the corporation, not the corporate representative in his individual capacity.[3]  The corporation merely speaks through the representative appearing at the

---

[3]Rule 30(b)(6), Fed. R. Civ. P., provides, in relevant part, "***Notice or Subpoena Directed to an Organization***.  In its notice or subpoena, a party may name as the deponent a public or private corporation . . . ."

deposition.  To depose the corporate representative in his own capacity, the deposing party must notice the deposition of the corporate representative in his personal capacity.  Here that was not done.  Consequently, the Court grants ESI's Motion for Protective Order as it relates to Request 24.

In Request 32, Parrot seeks "[c]opies of any and all contracts, indebtedness, agreements or invoice arrangements that you, Michael Savuskan, on behalf of ESI, Inc., have entered into with any entity or person since January 1, 2006."  ESI objects to this request because, its asserts, the request "implicates ESI's confidential business relationships with third parties.  Nor are any 'contracts, indebtedness, agreements or invoice arrangements' relevant to whether ESI allegedly acted as some sort of 'conduit' for fraudulent transfers."  D.E. 115 at 7.

The Court overrules ESI's objections as stated.[4]  For the reasons discussed above in addressing ESI's objections to Requests 2 and 17, the Court finds Request 32 to seek relevant information.  Finally, to the extent that ESI, in good faith, believes that any documents produced may reveal confidential information relating to ESI's business, it may designate such documents as confidential, and such documents shall be used only for purposes of this litigation.  Should a party need to file any documents identified as "confidential" with the Court, it shall do so under seal until further order of the Court.  The parties, their attorneys, and the agents of the parties and their attorneys shall not share any documents designated as "confidential" with anyone outside the litigation without prior permission in writing from the Court.

---

[4]ESI makes no objection to the direction of the request to "you, Michael Savuskan," unlike in ESI's objection to Request 24.  Consequently, the Court does not consider any such objection and views it as waived.  Instead, the Court interprets Request 32 to seek the specified documents into which Michael Savuskan, on behalf of ESI, has entered.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** ESI's

Motion for Protective Order [D.E. 115], consistent with the terms of this Order.

**DONE AND ORDERED** this 26th day of January, 2009.

_____

ROBIN S. ROSENBAUM

UNITED STATES MAGISTRATE JUDGE

cc:    Hon. William P. Dimitrouleas

        Counsel of Record

-14-